UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SCOTT RAY ALLEN,

        Plaintiff,

  -vs-

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**DECISION and ORDER**
**No. 1:16-cv-00273(MAT)**

---

### INTRODUCTION

Scott Ray Allen ("Plaintiff"), represented by counsel, brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("Defendant" or "the Commissioner"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

### PROCEDURAL STATUS

Plaintiff filed applications for DIB and SSI on September 11, 2012 (T.154-166),[1] alleging disability beginning on his date of birth in 1973. (T.154, 161). After Plaintiff's claims were initially denied on January 11, 2013 (T.89-96), he timely filed a written request for hearing on February 24, 2013. (Tr.97-98). On July 10, 2014, a hearing was held via videoconference before administrative law judge David J. Begley ("the ALJ"). (T.35-63). Plaintiff appeared with his attorney and testified, as did an

---

[1] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

impartial vocational expert, Stephanie Archer ("the VE"). On November 7, 2014, the ALJ issued an unfavorable decision. (T.10-29). Plaintiff requested review by the Appeals Council on January 24, 2014. (T.7-9). The Appeals Council denied the request on February 5, 2016, making the ALJ's decision the final decision of the Commissioner. (T.1-6). Plaintiff timely filed this action.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal.

For the reasons that follow, the Commissioner's decision is affirmed.

## THE ALJ'S DECISION

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period at issue. At step two, the ALJ found that Plaintiff had the following "severe impairments": lumbar degenerative disc disease, degenerative joint disease of the left shoulder, obstructive sleep apnea, asthma, obesity, borderline intellectual functioning, attention deficit hyperactivity disorder, and rule-out anxiety disorder and cannabis abuse. At step three, the ALJ determined that Plaintiff did not meet or equal any listed impairment. Before proceeding to step four, the ALJ assessed

Plaintiff as having the residual functional capacity ("RFC") to perform

> a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except he can occasionally climb, balance, stoop, kneel, crouch, and crawl. He should not reach overhead with the left upper extremity. He should avoid concentrated exposure to humidity, extreme heat and cold, and pulmonary irritants . . . . He should avoid slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames. Secondary to mental impairments, the claimant can perform simple, routine, repetitive tasks. He can work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting.

(T.15, 18).

At step four, the ALJ considered the VE's testimony from the hearing classifying Plaintiff's past relevant work: cashier (Dictionary of Occupational Titles ("DOT") 211.462-101, light exertion, SVP of 2); and sander (DOT 761.687-010, light exertion, SVP of 2). (T.60-61). Currently, Plaintiff was working as a salvage laborer (DOT 929.687-022, medium exertion, SVP of 2). (T.61). However, the VE testified, Plaintiff was actually performing this work at the light, not medium, exertional level. Furthermore, the VE was uncertain whether it could be considered competitive employment, because Plaintiff had a job coach present with him. The ALJ then had questioned the VE regarding a hypothetical individual with the above-quoted RFC. The VE testified that such an individual could perform Plaintiff's past work as a cashier, but could not perform his past work as a sander. (T.62). The VE also had testified that even assuming the laborer job was competitive, the

hypothetical individual could do the work as Plaintiff is performing it, but not as it is generally performed in the national economy. The ALJ relied on the VE's testimony to find that Plaintiff could perform his past work as cashier. Therefore, the ALJ did not proceed to the fifth step, and entered a finding of not disabled.

## SCOPE OF REVIEW

A decision that a claimant is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). The Commissioner's determination will not be upheld if it is based on an erroneous view of the law that fails to consider highly

probative evidence. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999).

## DISCUSSION

### I. Failure to Properly Weigh Therapist's Opinion

Plaintiff argues that the ALJ failed to include, in the RFC and hypothetical posed to the VE, the limitations assigned by his therapist, Licensed Master Social Worker Meagan Blowers ("LMSW Blowers"). On January 23, 2014, LMSW Blowers completed a Mental Health Assessment sent to her by Plaintiff's counsel in which she diagnosed Plaintiff with ADHD and social phobia (T.479-84). She also assessed Plaintiff as having following limitations: (1) difficulty concentrating or difficulty thinking, hyperactivity, easy distractibility; (2) marked difficulties in functioning independently, appropriately and/or effectively in planning daily activities and initiating and participating in activities independent of supervision and direction; (3) difficulty in communicating clearly and effectively, getting along with friends, displaying awareness of others' feelings, cooperating with others, exhibiting social maturity, responding to those in authority, responding without fear to strangers, establishing interpersonal relationships, avoiding altercations, and interacting and actively participating in group activities; (4) deficiencies in concentration and ability to assume increased mental demands associated with competitive work; and (5) withdrawal from

situations and superficial or inappropriate interaction with peers. (T.480-83).[2]

As an initial matter, the Court notes that, as a social worker, LMSW Blowers is not considered an "acceptable medical source." See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). SSR 06-03p states in pertinent part that "only 'acceptable medical sources' can give [the Commissioner] medical opinions." 2006 WL 2329939, at *2 (citation omitted). Furthermore, "only 'acceptable medical sources' can be considered treating sources, . . . whose medical opinions may be entitled to controlling weight." Id. (citations omitted). Nonetheless, opinions from individuals who are not acceptable medical sources they must be considered by the adjudicator, since the regulations require the Commissioner to "consider all relevant evidence in the case record when [she] make[s] a determination or decision about whether the individual is disabled." Id. at *4.

Here, the ALJ did not fail to comply with the applicable regulations since he did consider LMSW Blowers' report. However, the ALJ assigned it only "limited weight" because he found it to be "inconsistent with the objective evidence of record." (T.25); see

---

[2] The Court notes that check-box form did not ask the respondent to rate the levels of deficiencies or difficulties the claimant experienced in the various functional areas, or relate these limitations to the claimant's ability to perform relevant work activities. In Halloran v. Barnhart, 362 F.3d 28 (2d Cir. 2004), the Second Circuit noted the "limited value of the standardized check-box forms, which are considered only marginally useful for purposes of creating a reviewable factual record." Id. at 31, n. 2.

generally 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (medical assessment that is consistent with the record as a whole is generally entitled to more weight); Brown v. Comm'r of Soc. Sec., No. 3:15-CV-685, 2016 WL 3351021, at *7 (N.D.N.Y. June 14, 2016) ("Plaintiff also argues that the ALJ failed to give proper weight to plaintiff's treating sources, [a physician's assistant and a licensed social worker]. . . . However, even analyzing the[se] . . . opinions under the treating physician standard, this court agrees with the ALJ that the questionnaires are inconsistent with the contemporaneous treatment notes and the restrictions contained therein are not supported by the other evidence in the record, including the reports of the two consultative psychologist."). The ALJ also stated that LMSW Blowers failed to provide "longitudinal history of records of treatment, though Plaintiff reportedly participated in monthly counseling since 2011." (T.25).

With regard to the ALJ's comment about the lack of supporting notes from LMSW Blowers, Plaintiff argues that ALJ disregarded his "affirmative obligation to develop the administrative record[,]" Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996) (citations omitted), by failing to recontact LMSW Blowers and request her notes from Plaintiff's therapy sessions. However, the Commissioner did send a request to LMSW Blowers' employer, Wyoming County Mental Health Clinic ("WCMHC"), requesting psychiatric treatment notes from January 1, 2011, forward. The notes that were sent (T., Ex. 2F) did not include any notes from LMSW Blowers. Plaintiff's attorney subsequently sent a request dated May 16, 2014, directly to WCMHC

asking for "any and all of [WCMHC's] medical records[,]" which "should include, but not necessarily be limited to" "[a]dmittance report(s); [d]ischarge summary(ies); [r]ecords of tests; [r]ecords of medications; and [p]rogress notes." (T.390). This exhibit appears to duplicate the records provided by WCMHC as a result of the Commissioner's records request. Again, there are no notes from LMSW Blowers. Although the Commissioner's records request referenced "psychiatric" notes, the request that was actually sent by Plaintiff's counsel was phrased much more broadly and undoubtedly would have encompassed treatment notes from LMSW Blowers. The fact that no notes from LMSW Blowers provided in response to Plaintiff's counsel's requests suggests this Court that such records do not exist. Under the present circumstances, the Court cannot find that the ALJ failed to properly develop the record.

Turning to the ALJ's finding that LMSW Blowers' report was inconsistent with the other medical records, the Court finds that this rationale is supported by substantial evidence. For instance, the Medical Status Review on October 12, 2012 (T.378), by Thomas E. Gift, M.D., and Nurse Practitioner Susan Ives ("NP Ives") at WCMHC, indicates that Plaintiff's appearance was neat, his eye contact good, his mood, euphoric; and his affect, appropriate. Although he was anxious, he did not have pressured speech; he was not confused, forgetful or lethargic; and he was alert. (T.378). Based on the written Progress Notes by NP Ives and Dr. Gift, Plaintiff's main complaint was related to his prescription for Viagra, which he said

did not work. (Id.). Dr. Gift noted, "[Plaintiff] [r]eports doing well or at least OK in all respects except sexual function. . . . More composed and poised than typically, but a hint, as before, of hypomania. No new problems identified." (Id.). Plaintiff was continued on Wellbutrin and Viagra. (Id.).

In a Psychiatric Progress Note dated October 24, 2013 (T.406-07), Plaintiff reported to Dr. Gift that his medication (Risperdal) was "working pretty good," and he felt it "worke[ed] well 90% of the time."[3] Plaintiff denied any side effects from the medication. He characterized his sleep as "fairly good" though he was only getting about 5 to 6 hours per night. As far as his anxiety, he tried to go to a Halloween party but "got nervous" and could not go in, but eventually was able to go into the party once "most of the people cleared out." Dr. Gift noted that Plaintiff's appearance was "neat" and that he had "good" eye contact. Although Dr. Gift observed that Plaintiff was "anxious" and "forgetful," his mood was "stable," his affect was "appropriate," and he was "alert."

On April 2, 2014, Plaintiff reported to Dr. Gift that he liked going to hockey games and was "pleased he was able to deal with people." (T.408-09). He still "gets upset over personal things" and "might cry" "but then gets over it." He reported that his medications were "working well." Dr. Gift again noted that Plaintiff's appearance was neat and he had good eye contact. Although Dr. Gift still noted that Plaintiff was "anxious" and

---

[3] At the hearing, when asked how he thought his psychiatric medications were helping, Plaintiff replied, "Absolutely good. Helping a lot." (T.54).

"forgetful," Plaintiff's mood remained "stable," his affect was "appropriate," and he was "alert."

Consultative psychologist Dr. Kavitha Finnity completed a report (T.385-88) after examining Plaintiff on December 13, 2012, which similarly does not support LMSW Blower's extremely limited assessment. Dr. Kavithy noted that Plaintiff was "cooperative" and his manner of relating was "adequate"; he was dressed appropriately and was "well groomed"; his eye contact was "appropriate"; his affect was of "full range" and "appropriate in speech and thought content"; his mood was "neutral"; he had "intact" attention and concentration and was able to perform "serial 3s" accurately; he successfully performed all recent and remote memory tests; and he had "fair" insight and judgment. Dr. Finnity opined that despite cognitive functioning in the below average to borderline range, Plaintiff "can follow and understand simple directions and perform simple tasks" though he "has some difficulty with attention and concentration." Plaintiff also "can maintain a regular schedule[,]" "can learn new tasks and perform complex tasks with supervision[,]" "can make appropriate decisions[,]" and "can relate with others[,]" though he "has some difficulty dealing with stress." Dr. Finnity commented that "[t]he results of the evaluation appear to be consistent with psychiatric symptoms, but in itself [sic], may not be significant enough to interfere with [Plaintiff]'s ability to function on a daily basis." Indeed, Dr. Finnity's assessment is not inconsistent with the progress notes from Plaintiff's treating psychiatrist Dr. Gift. Nor was it inconsistent with the ALJ's RFC

assessment that Plaintiff was able to "work in a low stress job, defined as having no fixed production quotas, no hazardous conditions, only occasional decision making required, and only occasional changes in the work setting." (T.18). See Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)).

The psychological evaluation and intelligence testing (T.472-77) performed by Dr. Robert J. Valenti, Ph.D. on October 18, 2011, also does not support the severe limitations assigned by LMSW Blowers. In particular, Dr. Valenti observed that Plaintiff spoke in "full, relevant, well-articulated sentences, and was a generally good personal historian, particularly with dates and placing personal events in time[;]" had "polite and durable" "eye-to-eye and eye-to-task contacts[;]" and was "pleasant, attentive and fully cooperative." Based on clinical testing that day, Dr. Valenti noted that, inter alia, Plaintiff had a full scale IQ of 75, "would be to write and address a simple letter with little to no assistance," competently performed basic arithmetic, and understood counting currency for purposes of making simple purchases. Although Dr. Valenti stated that the results of the assessment supported a DSM-IV diagnosis of Borderline Intellectual Functioning, this, in and of itself, is not disabling. The Court notes that Plaintiff does not make any such argument.

In sum, the Court cannot find that the ALJ committed legal error in declining to give LMSW Blowers' report more than "little weight," and his reasons for doing so were supported by substantial evidence in the record.

**II. Failure to Develop the Record Regarding Plaintiff's Physical Limitations**

Plaintiff contends that the ALJ's RFC assessment did not adequately reflect his physical limitations related to his degenerative disc disease in the lumbar region of his back. In evaluating the severity of Plaintiff's back issues, the ALJ observed that "[o]verall, there is no evidence of debilitating physical condition(s)[,]" (T.23), and proceeded to note that while Plaintiff "was reportedly born with 'scoliosis [sic],' spina bifida, and/or cerebral palsy[,]" there was "no record of significant treatment or overt concern regarding these conditions." (Id.) (citation to record omitted). Plaintiff "was evaluated for lower back pain around 1996 and he declined lumbar surgery[,]" and "[s]ubsequently, he did not seek routine medical care for 12 years until October 2011[.]" (Id.) (citation to record omitted). The ALJ noted that while a recent lumbar MRI revealed lumbar disc desiccation, there was no evidence of significant central canal stenosis, and Plaintiff's physical examinations generally revealed that he had a normal gait and station. (Id.) (citation to record omitted). Relatedly, the ALJ observed, Plaintiff's health care providers expressed "no overt concern regarding his pain symptoms

and he was referred to pain management and physical therapy." (Id.).

Plaintiff argues that the ALJ disregarded his duty to develop the record because he did not question Plaintiff about his participation in pain management or physical therapy, and failed to seek records from the appropriate providers. This argument is without merit.

As an initial matter, the Court notes there were and are no obvious gaps in the record. At the commencement of the hearing, the ALJ asked Plaintiff's attorney if he had an opportunity to review the record and if so, was it complete. The attorney testified that he had submitted some information the day prior to the hearing, and the ALJ confirmed that he had received everything the attorney had sent. (T.36-37). Furthermore, the Commissioner's regulations, in effect at the time of the hearing, provided that when a claimant has legal representation, the attorney is "obligat[ed] to assist the claimant in bringing to [the Commissioner's] attention everything that shows that the claimant is disabled[.]" 20 C.F.R. § 404.1740(b)(1) (eff. until Apr. 20, 2015); see also Turby v. Barnhart, 54 F. App'x 118, 122–23 (3d Cir. 2002). In keeping with this principle, "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (citation omitted).

Here, Plaintiff's counsel was responsible for ensuring that the ALJ was aware of any facts favorable to Plaintiff's claim for benefits, such as his alleged participation in physical therapy or pain management treatment. Nevertheless, Plaintiff's counsel affirmatively represented that the record was complete despite the fact it did not contain any purported physical therapy or pain management record. In addition, the attorney had the opportunity to question Plaintiff after the ALJ completed his questioning, but he did not ask Plaintiff about what, if any, adjunctive treatments, he had sought for his back pain. On the present record, the Court discerns no failure on the part of the ALJ to develop the record. See Harrison v. Colvin, No. 2:14-CV-00719-TFM, 2014 WL 5148156, at *5 (W.D. Pa. Oct. 14, 2014) ("If there was something missing from the record, Plaintiff's counsel had a duty to bring it to the ALJ's attention. The Court will not permit Plaintiff, through her counsel, to 'rest on the record' only to 'later fault the ALJ for not performing a more exhaustive investigation. . . .'") (citing Maes, 522 F.3d at 1098). Furthermore, the Court is satisfied that substantial evidence, including the report by consultative physician Dr. Samuel Balderman (T.380-83), supports the ALJ's RFC assessment concerning Plaintiff's physical capabilities.

## CONCLUSION

For the foregoing reasons, the Court finds that the Commissioner's decision does not contain legal error and is supported by substantial evidence. Accordingly, the Commissioner's decision is affirmed. Plaintiff's Motion for Judgment on the

Pleadings is denied, and Defendant's Motion for Judgment on the Pleadings is granted. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**
_____
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 15, 2017
         Rochester, New York.